739 So.2d 312 (1999)
STATE of Louisiana
v.
James HARRIS, Jr.
No. 98 KA 2113.
Court of Appeal of Louisiana, First Circuit.
June 25, 1999.
*313 Dale R. Lee, A.D.A., Baton Rouge, for State of Louisiana.
Bertha M. Hillman, Thibodaux, for Defendant-Appellant.
Before: CARTER, C.J., SHORTESS and WHIPPLE, JJ.
SHORTESS, J.
James Harris (defendant) was charged by grand-jury indictment with one count of attempted second-degree murder, La. R.S. 14:27 and 14:30.1, and one count of armed robbery, La. R.S. 14:64. He pled not guilty. After a trial by jury, defendant was found guilty of aggravated battery on the attempted second-degree murder count and was found guilty as charged on the armed-robbery count. Subsequently, the trial court sentenced defendant to concurrent sentences of five years at hard labor on the aggravated battery conviction and thirty-two years at hard labor without benefit of probation, parole, or suspension of sentence on the armed-robbery conviction. Defendant argues in his single assignment of error the trial court erred by admitting into evidence a taped statement of an individual whom defendant was not able to cross-examine because that individual invoked his Fifth Amendment right against self-incrimination.

FACTS
Shane O'Rourke, the victim, testified at trial that on the evening of March 9, 1997, he was using a pay phone near his home in East Baton Rouge Parish when he saw a black male begin to use the phone next to him. Then two black males, he later identified in a photographic lineup as defendant and Ray Shelton, approached him carrying guns, pulled him to the ground, and demanded his car keys. When he hesitated, defendant shot him in the upper leg, and he then gave them his keys. The two men and the man who had been using the phone got into the victim's car. When the car would not start, the victim, who was still lying on the ground, heard Shelton tell defendant to shoot the victim again because he would not help them to start his car. When defendant walked up to the victim and put the gun in his face, the car started, so defendant took the victim's beeper and got in the car with the others. The victim adamantly denied that he had paged Shelton to meet him at the pay phone or that he was at the phone to sell drugs to Shelton.
Deputy Bryan Doucet testified he was working for the West Baton Rouge Sheriffs Office on the night of March 9, 1997, when a call was received from a citizen reporting that she heard noise at the end of the road that sounded like someone was stripping a car. He drove to the scene and, around 10:30 p.m., saw a car on jacks and two individuals. Various car parts were found scattered around the immediate area, and the tires had been removed from the car. The subjects ran and, during the chase, a third subject also appeared and fled from the deputy. *314 While looking under nearby houses for the subjects, the deputy found a rifle. The deputy then called for assistance and was informed the stripped vehicle had been stolen in a carjacking in East Baton Rouge Parish.
Sergeant Andrew LeBlanc of the West Baton Rouge Parish Sheriffs Office testified he followed a trail of car parts to the front door of the nearby home of a Ms. Shelton. She let the officers into her house where they discovered her son Ray Shelton, and Benjamin Eackles, both covered with mud, in a back room. These two individuals were then arrested.
Doucet also testified that later, in the early morning hours of March 10, 1997, Ms. Shelton called the Sheriffs Office to inform them a third individual had been hiding under her home, had entered her home wanting to use the phone, was covered with mud, and was now walking toward Highway 190. After apprehending defendant, Doucet again spoke with Ms. Shelton and, based on her description of this individual's action, looked under her home and found a revolver containing five unspent rounds and one spent round, as well as stereo equipment that had been taken from the vehicle and placed behind her house.
Detective Ike Vavasseur, a police officer for the City of Baton Rouge, testified he questioned defendant while he was in custody. During the statement, defendant admitted he was with Eackles and Shelton when he robbed and "popped" the victim at a pay phone and then fled with the others in the victim's vehicle.
The defense introduced the testimony of defendant, who stated he and the victim began to struggle when Shelton became upset with the quality of drugs the victim was trying to sell to Shelton. According to defendant, he grabbed his gun and shot the victim because he was afraid the victim was going for the gun. Defendant testified he did not intend to shoot the victim and did not mention the drug deal during his statement because he did not want to incur additional charges. Defendant admitted he and the other individuals took the victim's car without his permission.
In rebuttal, the State called Shelton as a witness, but he refused to testify, invoking his Fifth Amendment privilege against self-incrimination. Thereafter, the State introduced the testimony of Sergeant Michael Morris of the Baton Rouge Police Department, who indicated he questioned Shelton, along with Vavasseur, shortly after his arrest. In Shelton's taped statement, that was played for the jury, Shelton stated he, armed with a black rifle, "Frog," armed with a .22 revolver, and "Benjamin" were walking down the street when they saw the victim using the pay phone. According to Shelton, Frog believed the victim had money or dope that he could steal. Benjamin began to use the pay phone next to the victim, and "Frog" grabbed the victim around the neck, wrestled him to the ground, and shot the victim in his right hip. The victim then gave "Frog" his keys, and the three individuals drove across the river in his car where it was stripped. During his taped confession, defendant never mentioned he and the victim struggled over defendant's gun in the course of a drug deal. Morris and Vavasseur testified neither Shelton nor defendant ever gave any indication to them that the shooting occurred while the victim was selling drugs to Shelton, and Vavasseur added his investigation had determined "Frog" mentioned in Shelton's statement was defendant.

ASSIGNMENT OF ERROR NUMBER ONE
In his sole assignment of error, defendant, citing Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), argues his Sixth Amendment right to confront witnesses against him was violated because he was unable to cross-examine Shelton due to Shelton's invocation of his Fifth Amendment right against self-incrimination when Shelton's taped statement was played for the jury. Specifically, *315 defendant asserts a confession by a non-testifying co-perpetrator is presumptively unreliable and therefore inadmissible because it may be the product of the co-perpetrator's desire to shift blame or divert attention to defendant. And, defendant asserts in brief that his objection was not based on whether Shelton's statement constituted impermissible hearsay, only that its introduction violated his Sixth Amendment right to confrontation. Accordingly, we need not address the issue of whether the statement was properly admitted under the rules on hearsay found in the Louisiana Code of Evidence.
The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." The United States Supreme Court has held that this guarantee, which is extended to the States by the Fourteenth Amendment, includes the right to cross-examine witnesses. Cruz v. New York, 481 U.S. 186, 189, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). In Bruton, the Supreme Court was faced with determining whether a defendant is deprived of the right under the Confrontation Clause to cross-examine "witnesses against him" where, in a joint trial, the codefendant's confession that potentially incriminates defendant is introduced as evidence solely "against" the co-defendant, and the judge issues a limiting instruction to the jury that it be used only to assess the guilt of the codefendant. In that case, the codefendant chose not to testify and could not be cross-examined by the defendant. The Court held a defendant is deprived of his rights under the Confrontation Clause when a codefendant's incriminating confession is introduced against the codefendant at their joint trialeven if the jury is instructed to consider that codefendant's confession only against the codefendant. 391 U.S. at 126, 88 S.Ct. 1620.
In Cruz v. New York, the Court considered whether Bruton should apply to bar the introduction of the jointly-tried codefendant's confession as evidence "against" the codefendant even where the defendant's own confession, which "interlocked" with the codefendant's confession, had also been admitted as evidence against defendant at trial. Although four justices of the Court had previously intimated in Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), that Bruton was inapplicable in cases involving interlocking confessions because the introduction of the codefendant's confession was not "devastating" to the case of a defendant whose own interlocking confession was introduced as evidence against him, the majority in Cruz rejected that approach. Noting that the introduction of a jointly-tried codefendant's confession that interlocked with defendant's confession was even more harmful to defendant because it corroborated defendant's own guilty confession, the court decided to apply Bruton even in cases where codefendant's and defendant's confessions interlocked. Thus, Cruz held a non-testifying codefendant's confession also incriminating the defendant is not admissible against the codefendant at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own interlocking confession is admitted against him. Cruz, 481 U.S. at 193, 107 S.Ct. 1714.
Significantly, however, the Court in Cruz noted Bruton and its progeny were limited to cases involving jointly-tried defendants where the codefendant's confession is sought to be admitted as evidence solely against the codefendant. Bruton and Cruz would not operate to bar the introduction of a codefendant or co-perpetrator's confession as evidence directly against the defendant, the Court held, where such introduction met the requirements of Lee v. Illinois, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). Cruz, 481 U.S. at 193-94, 107 S.Ct. 1714.[1]
*316 In Lee, defendant and a codefendant were jointly tried for a double murder in a bench trial. Although neither testified at trial, the trial judge expressly relied on the codefendant's confession as substantive evidence against defendant. On appeal, defendant argued her right to cross-examine witnesses against her was violated by the trial court's consideration of the codefendant's confession as substantive evidence of her guilt where she had no opportunity to cross-examine the codefendant insofar as he chose not to testify.
The Court in Lee began by noting how the Confrontation Clause operates to advance the pursuit of truth in a criminal trial by:
(1) insur[ing] that the witness will give his statements under oaththus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forc[ing] the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth"; [and] (3) permit[ting] the jury that is to decide the defendant's fate to observe the demeanor of the witness making his statement, thus aiding the jury in assessing his credibility (footnote omitted).
Lee, 476 U.S. at 540, 106 S.Ct. 2056 (quoting California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)). A defendant is deprived of these truth-finding mechanisms where an accomplice's confession, particularly one made during custodial interrogation when the accomplice's motivation is highly suspect, is sought to be introduced against a defendant without benefit of cross-examination. Indeed, the Court in Lee noted a codefendant's confession is presumptively unreliable "as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another." Lee, 476 U.S. at 545, 106 S.Ct. 2056. As such, the Court held that accomplices' confessions that incriminate defendants are generally presumptively unreliable and thus inadmissible for Confrontation Clause purposes; however, this presumption may be rebutted by a significant showing of trustworthiness and other indicia of reliability as to the accomplice's confession. In doing so, the Court implied one factor to be considered in determining the trustworthiness of the declarant and his statement was whether the co-perpetrator's statement interlocked to some degree with defendant's admitted statement. Lee, 476 U.S. at 543-545, 106 S.Ct. 2056.
In Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), however, the Court clarified that the particularized guarantees of trustworthiness required for the admission of such a statement under the Confrontation Clause must be drawn from the totality of circumstances surrounding the making of the statement that render the declarant particularly worthy of belief and not from the fact that other evidence was introduced at trial that corroborated the statement. Significantly, the Court noted that whether the co-perpetrator's statement interlocked with a confession by the defendant was not an appropriate factor to be considered in determining the trustworthiness and reliability of the declarant and his statement. Idaho, 497 U.S. at 822-824, 110 S.Ct. 3139.
The facts of this case involve the introduction of, as substantive evidence of defendant's guilt, an accomplice's confession, implicating defendant, that interlocks with defendant's own admitted confession. Under the Lee and Idaho v. Wright line of cases by the Supreme Court, this statement is presumptively unreliable and therefore inadmissible under the Confrontation *317 Clause unless the presumption can be overcome by sufficient indicia of reliability and trustworthiness indicated solely by the totality of circumstances surrounding the making of the statement and without reference to any corroboration provided by the interlocking nature of the two statements. The weight of this presumption cannot be gainsaid and, indeed, in application, can be overcome only in the most rare circumstances.
In fact, the Fifth Circuit Court of Appeals appears to view these statements as being barred in almost all circumstances. In United States v. Flores, 985 F.2d 770 (5th Cir.1993), the court observed:
[T]here is [a] category of statements against penal interest that should generally be regarded as inadmissible under the Confrontation Clause, particularly where the declarant's unavailability is due simply to invocation of the Fifth Amendment in response to actual or potential prosecution, namely statements accusatory of another taken by law enforcement personnel with a view to prosecution. Such statements have two characteristics that together make them inherently unreliable: (1) the declarant makes accusatory statements that inculpate another; and (2) these statements are made to nonundercover law-enforcement personnel after the commission of the offense. In that generic situation there always exists the strong possibility that the declarant has the "desire to shift or spread blame, curry favor, avenge himself, or divert attention to another."
It is precisely in these circumstances that cross-examination, the "greatest legal engine ever invented for the discovery of truth," is preeminently suited to determining the trustworthiness of a declarant's statements as envisioned by the framers of the Confrontation Clause.
. . . .
The Supreme Court has never allowed the admission against a defendant of a codefendant's hearsay inculpatory statements to law enforcement authorities, although it has suggested that theoretically such hearsay could be admitted in appropriate circumstances.
Flores, 985 F.2d at 780, 782 (citations and footnote omitted).
Subsequently, after noting various factors indicating trustworthiness surrounding the making of the statement, the Fifth Circuit nevertheless stated:
While the presence of these factors... doubtless renders a given confession more reliable than it would otherwise be, we are not persuaded that it substantially eliminates any reasonable possibility that the third party inculpatory portions of a confession to law enforcement personnel are unreliable.
Flores, 985 F.2d at 782. As such, the Fifth Circuit then appeared to adopt a "general and categorical" approach barring the introduction of statements under these circumstances, "rather than calling for or being dependent on a case-by-case examination and weighing of particular factors or circumstances surrounding the statement and the declarant" pending "further guidance from the Supreme Court" on whether there might ever be an "extremely unusual case" where "consideration of a possible exception to the general rule of inadmissibility might be warranted." Flores, 985 F.2d at 783 n. 27.
We need not determine whether the circumstances surrounding the making of Shelton's statement indicate sufficient reliability and trustworthiness, however, because even assuming the trial court erred in admitting his confession as evidence against defendant, such error was harmless beyond a reasonable doubt. Reversal is mandated only when there is a reasonable possibility the evidence might have contributed to the verdict, and confrontation errors are subject to harmlesserror analysis. State v. Butler, 93-1317, p. 9 (La.App. 1st Cir.10/7/94), 646 So.2d 925, 930, writ denied, 95-0420 (La.6/16/95), 655 So.2d 340 (citing Chapman v. California, *318 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). See also Lee, 476 U.S. at 547, 106 S.Ct. 2056 (holding harmless-error analysis applies to this type of error), and Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). The correct inquiry is whether the reviewing court, assuming the damaging potential of the cross-examination were fully realized, might nonetheless say the error was harmless beyond a reasonable doubt. Factors to be considered include:
[t]he importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.
Butler, 93-1317 at pp. 9-10, 646 So.2d at 930-931, quoting Delaware v. Van Arsdall, 475 U.S. at 684, 106 S.Ct. 1431.
Applying the above factors to this case, we find the confrontation error, if any, was harmless beyond a reasonable doubt. Defendant's confession, in which he admitted he "popped" and "robbed" the victim and, while armed and along with Shelton and Eackles, took the victim's vehicle across the river to West Baton Rouge Parish without his permission, was admitted at trial. Shelton's statement was merely corroborative of the other evidence admitted at trial and did not contribute any new or additional information regarding the crime or defendant's role in the events other than that Shelton admitted in his statement he was carrying a rifle, a fact omitted by defendant in his statement. Although Shelton's statement did not mention defendant shot the victim because defendant believed the victim was reaching for defendant's gun during a dispute over a drug deal, the position defendant took during his testimony at trial, Shelton's statement was consistent with defendant's version of the events as given during his confession soon after the crime and with the victim's testimony at trial.
This assignment of error lacks merit.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] See also Lee, 476 U.S. at 542, 106 S.Ct. 2056 (emphasis added) ("[T]his is not strictly speaking a Bruton case because we are not here concerned with the effectiveness of limiting instructions in preventing spill-over prejudice to a defendant when his codefendant's confession is admitted against the codefendant at a joint trial. Rather, ... the State sought to use hearsay evidence as substantive evidence against the accused.").