975 So.2d 789 (2008)
STATE of Louisiana, Appellee
v.
Kendall M. DELANEY, Appellant.
No. 42,990-KA.
Court of Appeal of Louisiana, Second Circuit.
February 13, 2008.
*791 Louisiana Appellate Project, by Annette Roach, for Appellant.
J. Schuyler Marvin, District Attorney, John M. Lawrence, Joseph Gregorio, Assistant District Attorneys, for Appellee.
Before GASKINS, DREW and MOORE, JJ.
MOORE, J.
The defendant, Kendall M. Delaney, was convicted of armed robbery with a firearm. He was adjudicated as a second felony offender and sentenced to 50 years at hard labor on the armed robbery charge and five years at hard labor on the firearm charge to be served consecutively and without the benefit of probation, parole, or suspension of sentence. The defendant now appeals. We affirm defendant's conviction, but vacate and set aside Delaney's adjudication as a habitual offender and vacate the enhanced sentence based thereon. We remand for a new habitual offender proceeding and re-sentencing.

FACTS
On the morning of March 27, 2006, Christina Keck, the owner of Peter's Country Store, went to Hibernia Bank on Benton Road to make a deposit and withdraw $14,000 cash for funds on hand to cash payroll checks at her store.[1] She walked out of the bank with the money in a green Hibernia money bag tucked under her arm. As she walked to her car parked outside the bank, she noticed two men, one older and one younger, sitting in a green Dodge parked nearby. When she opened her car door, a man whom she identified as the younger man in the green Dodge, wrestled her down onto the front seat where the money bag lay underneath her. She testified that the defendant, who was on top of her, said something like, "Give me the bag, bitch." She answered, "No." He again demanded, "Give it to me," and she again said, "No." She then recognized a gun brush by her face, hitting her nose, and, fearing that she was about to be killed, she relinquished the money bag to the defendant.
*792 The defendant took the bag and got into the passenger seat of the green Dodge, the motor still running, and which was being driven by Aaron Delaney. The vehicle hastily backed out and sped off from the parking lot, but apparently not quickly enough to escape the determined pursuit of Ms. Keck. The victim quickly started her vehicle, called 9-1-1 on her cell phone and followed the green Dodge. She remained on the telephone with 9-1-1, reporting her whereabouts as she followed the vehicle. She testified that, as she was tailing the vehicle, she saw the defendant in the passenger seat, bobbing his head up and down when he opened the money bag and saw the cash. The driver made his way in Bossier City back to Interstate 20 West, heading toward Shreveport. Ms. Keck continued her pursuit on the interstate, following the vehicle down the exit ramp at Hearne Avenue, at which time, Ms. Keck said, she believed the robbers recognized that she was following them because the driver made an attempt to lose her. The driver of the Dodge feigned a right turn onto Hearne, but suddenly turned left instead. Ms. Keck kept up the chase behind him, however, and remained on her cell phone, reporting her movements to 9-1-1 along the way. While following the assailants onto Hearne, she recognized that a Bossier Police unit had joined the chase behind her, at which time, Ms. Keck said she "pulled over and let them take over."
Shortly after exiting I-20 at Hearne Avenue, the green Dodge ran over a traffic sign and came to a stop. The defendant exited the vehicle and jumped over a nearby fence. Aaron Delaney was removed by officers from the driver's side of the wrecked vehicle.
A K-9 unit was called to the scene, and the defendant was apprehended from under a house in the vicinity. The bank bag, now containing $12,000, was retrieved from under the house. The remaining $2,000 was found in the defendant's pants' pocket. The gun was retrieved from the green Dodge, in the area between the driver's seat and the console.
After being advised of their Miranda rights, Aaron Delaney and the defendant gave statements to the police. The defendant told police that Aaron Delaney held him at gunpoint, forced him to drive away from the crime scene, and ordered him to run away after the car wrecked. Aaron Delaney denied knowing the defendant and stated that the defendant made him drive away from the bank by force. Aaron Delaney died prior to trial.
In an amended bill of information, the defendant was charged with armed robbery with a firearm, a violation of La. R.S. 14:64 and 14:64.3. On February 13, 2007, a jury trial commenced in which the jury returned a verdict of guilty as charged. On April 24, 2007, the state filed a multiple offender bill charging the defendant as a third felony offender. After an habitual offender hearing, the defendant admitted to one of the previous offenses in the habitual offender bill. Thereafter he was adjudicated as a second felony offender and sentenced to 50 years at hard labor on the armed robbery charge and five years at hard labor on the firearm charge. The sentences were ordered to run consecutively and to be served without the benefit of probation, parole, or suspension of sentence. A motion to reconsider sentence was filed on June 4, 2007 and denied without a hearing. This appeal ensued.

DISCUSSION
By his first assignment of error, the defendant alleges that the trial court erred in allowing into evidence a statement made by Aaron Delaney to Officer Patrick McWilliams, a criminal investigator of the *793 City of Bossier. Aaron Delaney died prior to trial and prior to a hearing on whether his statement was voluntary. The defendant asserts that since Aaron Delaney could not be cross-examined at trial, admission of this statement violated Kendall Delaney's constitutionally guaranteed right of confrontation as set forth in the Sixth Amendment to the United States Constitution, La. Const. art. I, § 16 and Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The defendant further argues that this error was especially prejudicial because the bill of information still listed Aaron Delaney as a codefendant in the armed robbery, and the clerk and the trial judge read to the jury the bill of information charging the defendant and Aaron Delaney as codefendants.
In State v. Tennessee, 340 So.2d 1360 (La.1976), the defendant, Tennessee, and an accomplice, Phillips, were jointly charged with armed robbery. Prior to trial Phillips died,[2] but the state did not file a new bill of information nor amend the original bill so that only Tennessee was charged. Defendant was convicted of the armed robbery and he appealed, assigning two errors based on the failure of the district attorney to file a new bill: first, that the codefendant's death operated as a de facto court-ordered severance requiring that a separate bill be filed; and second, that the defendant was prejudiced because the indictment (information) went to the jury containing the name of Phillips and the district attorney asserted that the defendant was a participant in a shoot-out which led to Phillips' death." Id. at 1361.
The supreme court rejected both assignments, holding that there is no authority requiring that a new indictment be filed when one of the jointly charged defendants dies, and in this case, Tennessee was not prejudiced from the fact that information went to the jury containing Phillips' name. In rejecting the defendant's claim that his defense was prejudiced, the court observed that the defendant himself interjected that Phillips had been killed in a shoot-out in connection with another crime. The court also concluded that the defendant waived any complaint to whatever writings went into the jury room by failing to object at that time. Id., citing La. C. Cr. P. art. 841. Unlike the instant case, however, the court also noted that there was no reference to Phillips when the bill of information was read to the jury, although the bill sent to the jury room contained Phillips' name on the bill.
The facts of State v. Tennessee, supra, can be distinguished in that the clerk and the trial court in the instant case did read to the jury the name of Aaron Delaney as a codefendant in the armed robbery. Nevertheless, we conclude that the defendant was not prejudiced by that fact alone or in conjunction with Officer McWilliams' hearsay testimony regarding the statement Aaron Delaney made to him. First, the basis of defendant's defense against the charge was that he (Kendall Delaney) was an unwilling participant in his uncle's (Aaron Delaney's) attempt to avoid capture after the latter had committed an armed robbery. In both his opening statement and closing argument, the defense argued that his uncle committed the armed robbery and drove the escape vehicle forcing the defendant at gunpoint to go with him. Counsel for the defendant contended that he (the defendant) was guilty only of poor judgment by fleeing the *794 scene after the vehicle crashed. Moreover, the defendant made no objection to the bill of information at trial, and therefore waived the right to assert an objection to the bill on appeal. State v. Tennessee, supra; La. C. Cr. P. art. 841. Hence, insofar as the bill of information charges Aaron Delaney with the armed robbery, the bill raises no factual assertion that the defendant himself was not also asserting at trial. We find no prejudice in the state's failure to file a new bill of information. Nor do we find that naming Aaron Delaney as a codefendant on the bill resulted in even greater prejudice as a result of Officer McWilliams' testimony regarding his written recollection of Aaron Delaney's statement in which Aaron Delaney asserted that Kendall Delaney was the actual culprit in the crime.
McWilliams testified that on the afternoon of the robbery, he interviewed both Aaron Delaney and Kendall Delaney in separate rooms, going back and forth between the two. Each asserted that the other had committed the robbery and each asserted that the other had forced him at gunpoint to escape from the bank parking lot in the green Dodge vehicle. Aaron Delaney claimed he had never seen Kendall Delaney in his life and that he was the victim of carjacking by the other suspect. However, when McWilliams confronted Aaron Delaney with Kendall Delaney's admission that Aaron was his uncle and his accusation that he (Aaron) committed the robbery, Aaron refused to make any further statements.
Prior to trial, on October 31, 2006, the state filed a "Notice of Intent to Request Pretrial Determination of Admissibility of Defendant's Statement and Other Evidence." At the hearing on this motion, the defense sought to suppress Kendall Delaney's statement to police by alleging that it was made under duress caused by the police K-9 bite wounds on his arms that he had received when he was captured after his attempted escape, and therefore the statement was not voluntary or reliable. During this hearing the state brought up the matter of McWilliams' recollection and written notes of Aaron Delaney's statement. The defense objected to the state using McWilliam's recollection of Aaron's statement as evidence at trial on grounds that Aaron Delaney had died, and counsel had no way of knowing whether the statement was voluntary, nor could he challenge Aaron Delaney regarding the substance statement. The district court ruled that Aaron Delaney's statement was voluntary and presumably ruled that the statement was admissible, but it limited its ruling strictly to the voluntariness issue, preserving the defendant's right to "reopen the matter." The defense never raised an objection before or during Officer McWilliams' testimony at trial, and thus the court never ruled beyond the issue of whether Aaron Delaney's statement was voluntary.
At trial, Officer McWilliams' testified regarding the substance Aaron's statement accusing the defendant as the sole culprit. This evidence was apparently introduced to counter testimony of Officer McWilliams adduced by the defense that the gun used in the robbery was found between the console and driver's seat. The Hibernia bag contained the money and Aaron Delaney's personal papers that included pay check stubs, his car registration, job applications and an eviction notice. The defense's strategy was to implicate Aaron Delaney, and not the defendant, as the actual robber. Defense counsel had asserted this argument in his opening statement. During Officer McWilliams' testimony regarding the substance of Aaron Delaney's statement, the defense raised no evidentiary or confrontation objection. The defendant now contends on appeal *795 that he was denied his constitutional right to confront Aaron Delaney through cross-examination of him regarding the statement. Clearly Officer McWilliams' testimony was hearsay, but the question on appeal goes to Aaron Delaney's statement, and involves the more serious and distinct issue of Kendall Delaney's constitutional right to confront an unavailable witness.
Ordinarily, in order to preserve an issue for appellate review, a party must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for the objection. La. C. Cr. P. art. 841(A). It is well-established that a defendant is limited to the grounds for objection articulated at trial and a new basis for an objection may not be raised for the first time on appeal. The one exception to the requirement of an objection is a court's ruling on any written motion. La. C. Cr. P. art. 841(B). In this instance, the court ruled on the state's written motion filed on October 31, 2006, wherein the defense challenged the admission of Aaron Delaney's statement on grounds that it had no way to know its contents or whether it was voluntary. Assuming that this ruling meets the "ruling" requirement of Art. 841(B), for the following reasons, we conclude that this assignment is without merit.
By remaining a named codefendant on the bill of information, Aaron Delaney's death prior to trial is closely analogous to a situation in which he survived to go to trial and exercised his right not to testify. Aside from the hearsay issue, which is an evidentiary issue, McWilliams' testimony regarding the statement of codefendant Aaron Delaney implicating the defendant raises the constitutional issue of defendant's right to confront his accuser. The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." The United States Supreme Court has held that this guarantee, which is extended to the States by the Fourteenth Amendment, includes the right to cross-examine witnesses. Cruz v. New York, 481 U.S. 186, 189, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court was faced with determining whether a defendant is deprived of the right under the Confrontation Clause to cross-examine "witnesses against him" where, in a joint trial, the codefendant's confession that potentially incriminates defendant is introduced as evidence solely "against" the codefendant, and the judge issues a limiting instruction to the jury that it be used only to assess the guilt of the codefendant. In that case, the codefendant chose not to testify and could not be cross-examined by the defendant. The Court held a defendant is deprived of his rights under the Confrontation Clause when a codefendant's incriminating confession is introduced against the codefendant at their joint trial-even if the jury is instructed to consider that codefendant's confession only against the codefendant. 391 U.S. at 126, 88 S.Ct. 1620, 20 L.Ed.2d 476.
In Cruz v. New York, supra, the Court considered whether Bruton should apply to bar the introduction of the jointly-tried codefendant's confession as evidence "against" the codefendant even where the defendant's own confession, which "interlocked" with the codefendant's confession, had also been admitted as evidence against defendant at trial. Although four justices of the Court had previously intimated in Parker v. Randolph, 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), that Bruton was inapplicable in cases involving interlocking confessions because the introduction of the codefendant's confession was not "devastating" to the case of a defendant whose own interlocking confession *796 was introduced as evidence against him, the majority in Cruz rejected that approach. Noting that the introduction of a jointly-tried codefendant's confession that interlocked with defendant's confession was even more harmful to defendant because it corroborated defendant's own guilty confession, the court decided to apply Bruton even in cases where codefendant's and defendant's confessions interlocked. Thus, Cruz held a non-testifying codefendant's confession also incriminating the defendant is not admissible against the codefendant at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own interlocking confession is admitted against him. Cruz, 481 U.S. at 193, 107 S.Ct. 1714.
Importantly, however, the Court in Cruz noted Bruton and its progeny were limited to cases involving jointly-tried defendants where the codefendant's confession is sought to be admitted as evidence solely against the codefendant. Bruton and Cruz would not operate to bar the introduction of a codefendant or co-perpetrator's confession as evidence directly against the defendant, the Court held, where such introduction met the requirements of Lee v. Illinois, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). Cruz, supra, 481 U.S. at 193-94, 107 S.Ct. 1714.
In Lee, supra, defendant and a codefendant were jointly tried for a double murder in a bench trial. Although neither testified at trial, the trial judge expressly relied on the codefendant's confession as substantive evidence against defendant. On appeal, defendant argued her right to cross-examine witnesses against her was violated by the trial court's consideration of the codefendant's confession as substantive evidence of her guilt where she had no opportunity to cross-examine the codefendant insofar as he chose not to testify. The Court in Lee noted how the Confrontation Clause operates to advance the pursuit of truth in a criminal trial by: (1) insur[ing] that the witness will give his statements under oath-thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forc[ing] the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth"; [and] (3) permit[ting] the jury that is to decide the defendant's fate to observe the demeanor of the witness making his statement, thus aiding the jury in assessing his credibility (footnote omitted). Lee, supra, 476 U.S. at 540, 106 S.Ct. 2056 (quoting California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)). A defendant is deprived of these truth-finding mechanisms where an accomplice's confession, particularly one made during custodial interrogation when the accomplice's motivation is highly suspect, is sought to be introduced against a defendant without benefit of cross-examination. Indeed, the Court in Lee noted a codefendant's confession is presumptively unreliable "as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another." Lee, 476 U.S. at 545, 106 S.Ct. 2056. As such, the Court held that accomplices' confessions that incriminate defendants are generally presumptively unreliable and thus inadmissible for Confrontation Clause purposes; however, this presumption may be rebutted by a significant showing of trustworthiness and other indicia of reliability as to the accomplice's confession. In doing so, the Court implied one factor to be considered in determining the trustworthiness of the declarant and his statement was whether the co-perpetrator's statement interlocked *797 to some degree with defendant's admitted statement. Lee, supra, 476 U.S. at 543-545, 106 S.Ct. 2056.
In Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), however, the Court clarified that the particularized guarantees of trustworthiness required for the admission of such a statement under the Confrontation Clause must be drawn from the totality of circumstances surrounding the making of the statement that render the declarant particularly worthy of belief and not from the fact that other evidence was introduced at trial that corroborated the statement. Significantly, the Court noted that whether the co-perpetrator's statement interlocked with a confession by the defendant was not an appropriate factor to be considered in determining the trustworthiness and reliability of the declarant and his statement. Idaho, supra, 497 U.S. at 822-824, 110 S.Ct. 3139.
The facts of this case involve the introduction of, as substantive evidence of defendant's guilt, a hearsay account of an accomplice's statement implicating defendant, that does not interlock with defendant's statement, wherein he accuses the accomplice as the sole culprit in the armed robbery. Under the Lee and Idaho v. Wright line of cases of the Supreme Court, Aaron Delaney's statement is presumptively unreliable and therefore inadmissible under the Confrontation Clause unless the presumption can be overcome by sufficient indicia of reliability and trustworthiness indicated solely by the totality of circumstances surrounding the making of the statement.[3] The weight of this presumption cannot be ignored and, indeed, in application, can be overcome only in the most rare circumstances. State v. Harris, 1998-2113 (La.App. 1 Cir. 6/25/99), 739 So.2d 312.
As noted by the panel in Harris, supra, the Fifth Circuit Court of Appeals appears to view these statements as being barred in almost all circumstances. In United States v. Flores, 985 F.2d 770 (5th Cir.1993), the court observed:
[T]here is [a] category of statements against penal interest that should generally be regarded as inadmissible under the Confrontation Clause, particularly where the declarant's unavailability is due simply to invocation of the Fifth Amendment in response to actual or potential prosecution, namely statements accusatory of another taken by law enforcement personnel with a view to prosecution. Such statements have two characteristics that together make them inherently unreliable: (1) the declarant makes accusatory statements that inculpate another; and (2) these statements are made to non undercover law-enforcement personnel after the commission of the offense. In that generic situation there always exists the strong possibility that the declarant has the "desire to shift or spread blame, curry favor, avenge himself, or divert attention to another."
It is precisely in these circumstances that cross-examination, the "greatest legal engine ever invented for the discovery of truth," is preeminently suited to determining the trustworthiness of a declarant's statements as envisioned by the framers of the Confrontation Clause. * * *
The Supreme Court has never allowed the admission against a defendant of a *798 codefendant's hearsay inculpatory statements to law enforcement authorities, although it has suggested that theoretically such hearsay could be admitted in appropriate circumstances.
Flores, supra, 985 F.2d at 780, 782 (citations and footnote omitted).
However, in this case, we need not determine whether the circumstances surrounding Aaron Delaney's statement indicate sufficient reliability and trustworthiness because, even assuming the trial court erred in allowing his statement as evidence against defendant, such error was harmless beyond a reasonable doubt. See State v. Harris, supra.
Confrontation right claims are subject to a Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) harmless error analysis. See Delaware v. Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438; State v. Robinson, XXXX-XXXX (La.5/17/02), 817 So.2d 1131, 1137; State v. Hawkins, 96-0766 (La.1/14/97), 688 So.2d 473, 478; State v. Wille, 559 So.2d 1321, 1332 (La. 1990).
The correct inquiry is whether, assuming that the damaging potential (to the state's case) of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986); State v. Robinson, supra at 1137.
The confrontation error in this case was harmless beyond a reasonable doubt even if the full potential of a cross-examination of Aaron Delaney were realized. First, we note in our review of the trial transcript that the defense's cross-examination of Officer McWilliams regarding Aaron Delaney's statement was as effective, if not more so, than an actual cross-examination of Aaron Delaney, and showed, if anything, that Aaron Delaney's statement to police was unreliable. The transcript reveals the tone of McWilliams' responses to questioning by the defense and reflect McWilliams' own incredulous view of Aaron Delaney's statement. In particular, McWilliams testified that Aaron Delaney "claimed" himself to be a victim and he "claimed" he had never in his life seen Kendall Delaney before the robbery. However, McWilliams testified that when he confronted Aaron Delaney with the fact that he knew he was Kendall Delaney's uncle, Aaron Delaney reacted angrily, and refused to discuss anything further.
More importantly, the state's case was based primarily on the testimony of Ms. Keck. She testified that she saw Aaron Delaney and Kendall Delaney in the parked car together before the robbery as she was returning to her car. She identified Kendall Delaney as her assailant. She identified the car, the money bag, the amount and denominations of the money taken, the paper license plate as well as the facts regarding the escape. At best, Aaron Delaney's statement accusing Kendall Delaney of committing the robbery is very weakly cumulative since the victim herself identified the defendant as the armed robber and the other physical evidence against the defendant was strong.
The full damaging potential of a cross-examination of Aaron Delaney would have *799 been to undermine the credibility of Aaron Delaney's statement exculpating himself that he was not involved in the robbery, that he did not know Kendall Delaney, and that Kendall Delaney forced him to drive the vehicle. However, the testimony of Ms. Keck and the other facts developed by the defense, namely the fact that the gun was found between Aaron Delaney's seat and the console, and the personal papers Aaron Delaney found in the money bag all tend to show that Aaron Delaney was involved in the robbery along with Kendall Delaney, but these facts do not undermine the verdict against Kendall Delaney that he was guilty of armed robbery beyond a reasonable doubt.
Accordingly, for the foregoing reasons, we conclude initially, that by failing to object to McWilliams' testimony as hearsay, the defendant waived the right to assert a hearsay objection on appeal; we further conclude that any error in the court's pre-trial ruling on whether the Aaron Delaney's statement was voluntary and admitting Officer McWilliams' testimony regarding Aaron Delaney's statement which was not subject to cross-examination was harmless error in this case. Accordingly, this assignment is without merit.
By his second assignment of error, appellant alleges that the trial court erred in sentencing him under the habitual offender laws. The court failed to advise the defendant of his rights and obtain a proper waiver of these rights and receive an admission to the habitual offender bill from Kendall Delaney before imposing sentence under the habitual offender laws.
Specifically, the defendant argues that the trial court failed to advise him of the specific allegations contained in the habitual offender bill, his right to a full hearing, and his right to remain silent and failed to obtain a proper waiver of these rights. The defendant further argues that it was improper to sentence him as a second felony offender as the transcripts of the habitual offender proceedings do not contain sufficient discussion to support a finding that he entered an admission to one of the two predicate offenses listed in the habitual offender bill.
We conclude that this assignment has merit.
Before accepting a defendant's admission that he is a multiple offender, the trial judge must specifically advise the defendant of his right to a formal hearing, his right to require the state to prove his identity as a multiple offender, and his right to remain silent. La. R.S. 15:529.1(D); State v. Brown, 42,188 (La. App. 2 Cir. 9/26/07), 966 So.2d 727. A trial court's failure to properly advise a defendant of his rights under the Habitual Offender Law constitutes patent error on the face of the record and requires that the habitual offender's adjudication and sentence be vacated. State v. Odom, 34,054 (La.App. 2 Cir. 11/1/00), 772 So.2d 281, 288.
In State v. Mason, 37,486 (La.App. 2 Cir. 12/10/03), 862 So.2d 1077, this court explained that failure to inform a defendant of his rights during the habitual offender proceedings is error patent, but that under certain circumstances the error may be harmless. We stated:
La. R.S. 15:529.1(D)(1)(a) requires that the Defendant be advised of the specific allegations contained in the habitual offender bill of information and his right to a formal hearing at which the State must prove its case. Implicit in this requirement is the additional requirement that the Defendant be advised of his constitutional right to remain silent. Generally, the failure of the trial court to advise the Defendant of his right to a hearing and his right to remain silent is *800 not considered reversible error where the Defendant's habitual offender status is established by competent evidence offered by the State at a hearing rather than by admission of the Defendant. However, when the guilt of the Defendant is proven by his own stipulation or admission to the habitual offender bill of information, without having been informed of his right to a hearing or his right to remain silent by either the trial court or his attorney, there is reversible error. State v. Bell, 03-217(La.App. 5 Cir. 5/28/03), 848 So.2d 87, 90.
In this case, the transcripts of the habitual offender proceedings do not reflect that the trial court advised the defendant of any rights relative to a habitual offender proceeding. According to State v. Mason, supra, this failure could be harmless error if the defendant's guilt "is established by competent evidence offered by the State at a hearing, rather than by admission of the Defendant."
The transcripts do reflect that the defendant stipulated to one prior felony conviction for possession of cocaine of which he was alleged to have been convicted on July 29, 2002. However, the state failed to submit competent evidence, such as certified copies of the bills of information, court minutes, or transcripts corresponding to those prior convictions, to establish that the defendant was a habitual offender outside of his stipulation. Accordingly, the trial court's failure to properly advise the defendant of his rights constitutes patent error on the face of the record and requires that the habitual offender's adjudication and sentence be vacated.
By his third assignment of error, defendant alleges that the trial court erred by imposing a separate five-year hard labor sentence for the firearm enhancement provisions contained in La. R.S. 14:64.3.
The defendant argues that the sentences should be set aside because the trial court imposed sentences under both the habitual offender statute and under the firearm enhancement statute for the single crime of armed robbery with a firearm. In the event that this court disagrees, the defendant argues that the sentence should be amended to delete the requirement that the additional five years be served at hard labor as the statute did not provide for a hard labor sentence at the time of the commission of the offense.
The defendant's principal argument was rejected recently in State v. King, XXXX-XXXX (La.10/16/07), 969 So.2d 1228. We therefore conclude that in light of State v. King, supra, the trial court was correct in sentencing the defendant to an additional five-year term for a violation of La. R.S. 14:64.3. We also note, however, that the trial court erred in ordering the additional five-year sentence imposed under La. R.S. 14:64.3 to be served at hard labor. When the defendant committed the present offense, the statute did not provide for a hard labor sentence. See King, supra at 1232.

CONCLUSION
For the foregoing reasons, the defendant's conviction for Armed Robbery with a Firearm is affirmed. The adjudication and enhanced sentence as a habitual offender is vacated. We remand for a new habitual offender proceeding and re-sentencing. The five-year sentence imposed pursuant to La. R.S. 14:64.3 should be amended to delete the provision requiring the sentence to be served at hard labor, but affirming that it must be served consecutively.
CONVICTION AFFIRMED; HABITUAL OFFENDER SENTENCE VACATED; *801 CASE REMANDED FOR RESENTENCING AND AMENDMENT.
NOTES
[1] Ms. Keck testified that she arrived at the bank shortly before the bank opened that morning.
[2] The defendant asserted at trial that Phillips was killed in a shoot-out during an incident (kidnapping) unrelated to the armed robbery while he (defendant) was in Houston. The defendant asserted on appeal that the district attorney stated at trial that Phillips was fatally wounded during the armed robbery.
[3] Under Lee, supra, and Idaho, supra, reliability must be shown without reference to any corroboration provided by the interlocking nature of the two statements (codefendant and defendant). However, in this case, the two statements do not interlock, since each codefendant accused the other as the sole culprit in the armed robbery.